J. Kenneth Serve, J.
This is an appeal from a judgment of conviction of the Court of Special Sessions of the Town of Albion, New York [Hamilton Doherty, J.]. The defendant was found guilty by a jury of operating and conducting a second *383 hand junk and auto parts business without a license, in violation of a Town of Albion ordinance. For such violation, the Justice of the Peace, who presided at the trial, sentenced the defendant to pay a fine of $300 or 90 days in jail. Upon the defendant complying with certain conditions, the sentence would stand suspended.
The ordinance that the defendant was charged with violating was enacted by the Albion Town Board on February 17, 1961, and is entitled, “ An Ordinance Licensing and Regulating Dealers in Second Hand Junk and Auto Parts Activities and Businesses ”. In section 1 of the ordinance, the Town Board expressed its legislative intent in the adoption of the ordinance. The intent is defined as follows:
“ Regulating and controlling and licensing activities or businesses known as
“ (a) Auto graveyards,
“ (b) Junk yards,
“ (c) Second-hand collection parts areas,
“ (d) Processing of used materials for resale,
“ (e) Dumping and storage and disposal of waste, secondhand or used materials, of whatever composition.”
Section 3 of the ordinance states when the license is required. This section provides that no person shall engage in or conduct on real property within the Town of Albion, any activity or business which involves, (1) collection, (2) storage, (3) burning, (4) dumping, (5) disassembling, (6) dismantling, (7) salvaging, (8) sorting or otherwise handling or arranging for sale, resale, storage, or disposal, or otherwise, of bodies, engines, or parts of autos or of any other second-hand or used property.
The term “ any activity or business ” as used in section 3 of the ordinance is limited in its meaning by the legislative intent as expressed in section 1 of the ordinance.
The information charged that between August 1, 1961 and February 21,1962, ‘ ‘ at the Ray Severns Gas Station Garage and Junk Yard ”, the defendant did operate and conduct a “ Second Hand Junk and Auto Parts Business ”, without a license, by buying, selling, collecting, storing, disassembling, dismantling, salvaging, sorting and otherwise handling and arranging for sale or resale of autos and other second-hand or used property, and the defendant did all of such acts in violation of the aforementioned ordinance.
In this case, the information served also as the deposition. The information was sworn to before a notary public and not before a Magistrate, as required by the Code of Criminal Procedure. When the defendant’s attorney appeared with the *384 defendant for the arraignment, the attorney for the defendant made a motion to dismiss the information for such irregularity, but his motion was denied. In the defendant’s affidavit of appeal, this irregularity was not specified as a reason for a reversal of the judgment of conviction, and therefore this court cannot consider it in making a determination of this appeal.
The defendant, during the time set forth in the information and for some time prior thereto, had been engaged in the operation of a gas station and a garage for the repair of automobiles, in the Town of Albion, New York. In connection with the garage business, he also operated a towing car service.
In order to establish the violation of this ordinance, the prosecution called two witnesses, Mr. Scharping and Mr. Bloom, who testified as to their inspection of the defendant’s premises on October 18,1961. The inspection was made by such witnesses in their capacity as members of the Town Board. No other witnesses were produced by the prosecution.
Mr. Scharping testified that when he inspected the defendant’s premises on October 18, 1961, he observed an accumulation of damaged, totally wrecked, partially dismantled, rusty autos scattered about the premises toward the rear of the defendant’s property; that behind the garage building was a large pile of junk. (This characterization of the material was made by the witness.) He also testified that he observed a smaller pile which appeared to be parts of bumpers and materials of that nature, and some of which appeared to be damaged. Upon further questioning, this witness testified that the large pile of junk extended nearly across the rear of the garage building, and was 30 feet long and approximately 10 feet in width, and was composed of scrap that had been removed from automobiles that had been repaired. In reference to this pile of material, the witness stated that the defendant told him that ‘ ‘ when he got a truck load, he got rid of it, he sold it.”
The witness also testified that between August 1, 1961, and February 21, 1962, he had been by the defendant’s place a few times, and he had observed what he would consider totally damaged, wrecked cars.
Mr. Bloom testified that when he inspected the defendant’s premises on October 18, 1961, he observed the rear of the property in particular, and “ swelling out on the sides ” was well littered with automobiles in ‘ ‘ various states of demolition, apparently having been wrecked. They were lying about the premises at random, with no particular order, extending out to the edge of the road, to the edge of the ditch adjoining the property.” The witness further stated he saw a “consider *385 able ” amount of rubbish, consisting of old auto parts and ‘ ‘ partial ’ ’ bodies; that he also saw an automobile body that had been burned, and an “ accumulation of odd parts piled up, such as bumpers, chrome rims ’ ’.
The People introduced into evidence two photographs of the defendant’s premises which portrayed the conditions that existed there on October 18,1961. With the introduction of the photographs, the People rested.
The defendant testified in substance as follows: that he was not engaged in the junk business but that he did operate on the premises in question a gasoline service station and garage for the repair of automobiles; that in connection with the garage business, he operated a towing service; that in the operation of his towing service business, broken and damaged automobiles were brought to his garage premises; that some of the damaged and wrecked vehicles were left on his premises for repairs to be made at his garage, others were later removed to other garages for repairs; that some of the wrecked automobiles that were towed to his garage premises were beyond repair, and if the owners of such vehicles did not claim them in 90 days, such vehicles were sold so that the defendant could recover the towing charges; that some of these damaged cars also were stored on the garage premises for long periods of time because insurance companies were involved in their disposition. The defendant further testified that the cars which he towed into his garage premises are not owned by him, but are merely left upon his premises.
The defendant further testified that in the process of repairing automobiles, there were many damaged and broken parts that had to be disposed of, and such parts were placed in a pile in the back yard of his garage premises. He further stated that the pile of such broken parts remained upon his premises until it amounted to a truck load. The smaller articles, which were designated as rubbish, were placed in barrels and removed at weekly intervals.
Although the violation of the ordinance was designated an offense and not a crime, it was incumbent upon the People to prove every essential element of the charge beyond a reasonable doubt. (Town Law, § 135, subd. 2; People ex rel. Siegal v. Dros, 11 N Y 2d 167.)
To sustain this charge, it was the obligation of the People to prove that at the times alleged in the information, the defendant did conduct a second-hand junk and auto parts business, and in connection with such business that he did buy, sell, collect, store, disassemble, dismantle, salvage, sort and arrange for sale *386 or resale autos and other second-hand or used property. The sum of the People’s testimony is that certain wrecked automobiles were observed at the defendant’s garage premises and that some damaged auto parts were piled in back of the garage. No testimony was produced by the People to show that the defendant purchased any of the automobiles in question or that he did bring them upon his premises for the purpose of resale. Nor did the People show that the defendant dismantled or disassembled any of the autos observed on the premises. There was a complete absence of proof as to any sale of second-hand auto parts or the wrecked automobiles, except for the purpose of recovering towing charges.
The testimony shows conclusively that the wrecked cars that were upon the defendant’s premises were there as an incident to his towing service business and also his garage repair business; and further, that the damaged automobile parts in back of the garage resulted from the operations of his automobile repair business. From the testimony produced in this case, it is obvious that the defendant was not conducting a second-hand junk and auto parts business within the scope of the ordinance. The occasional sale of damaged auto parts, which accumulated as a result of the defendant’s repair business, and which he had trucked away from time to time, was not forbidden by the terms of the ordinance.
The evidence does show that the defendant apparently maintained his garage premises in a disorderly manner which resulted in an unsightly condition. However, disorder and unsightliness do not in and of themselves convert a garage and towing service business into a junk business. If the defendant did maintain his premises in such a manner that it resulted in a public nuisance, then proper procedures should have been undertaken to abate any nuisance that may have existed.
The People have failed to prove beyond a reasonable doubt the charges set forth in the information.
The judgment of conviction is reversed, the sentence is vacated, and the information is dismissed.